IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WASHIE OUMA,

                Plaintiff,

      v.

CLACKAMAS COUNTY, WASHINGTON
COUNTY, and JOHN DOES 1-9,

                Defendants.

No. 3:12-cv-01465-HZ

OPINION & ORDER

Marianne G. Dugan
Attorney at Law
259 E. 5th Ave., Ste. 200-D
Eugene, OR 97401

      Attorney for Plaintiff

Alexander Gordon
Stephen Lewis Madkour
Clackamas County Counsel
2051 Kaen Rd., 4th Floor
Oregon City, OR 97045

/ / /
/ / /

1 - OPINION & ORDER

Chelsea J. Glynn
Elmer Manuel Dickens, Jr.
Washington County Counsel
155 N. First Ave., Suite 340, MS 24
Hillsboro, OR 97124

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Washie Ouma brings this action under 42 U.S.C. § 1983 against Defendants Clackamas County, Washington County, and John Does 1-9. Plaintiff claims that he was falsely arrested and mistreated during his imprisonment in Clackamas County and Washington County jails. Defendants Clackamas County and Washington County have moved for summary judgment. A hearing on the motions was held on May 6, 2014. I grant Clackamas County's motion [37] because Plaintiff has not been able to identify John Does 1, 2, or 3, and has not identified a constitutional violation to support his § 1983 claim for municipal liability. I also grant Washington County's motion [45] because there is no constitutional violation to support Plaintiff's § 1983 claim for municipal liability.

## BACKGROUND

Plaintiff Ouma was charged with Sexual Abuse in the first and third degrees by the Clackamas County District Attorney's Office. Dugan Decl. [56] Ex. M. An arraignment letter from the District Attorney's Office notified Ouma that his arraignment was set for May 12, 2010. Id. Ouma was warned that if he did not appear, an arrest warrant would issue. Id. Ouma did not appear for his arraignment, and that day, and the judge issued an arrest warrant charging Ouma with Sexual Abuse III. Clackamas Cnty. MSJ Exs. 1 and 3. The warrant was based on sworn testimony from the deputy district attorney regarding the basis for the Sexual Abuse III charge. Clackamas Cnty. MSJ Ex. 3.

2 - OPINION & ORDER

On August 11, 2010, Ouma was arrested and brought to Washington County jail. Wiley Decl. [49] ¶ 7. Corporal Heather Wiley recommended that Ouma be placed on suicide watch based on several factors, including Ouma's statement that he was sad. Id. at ¶ 9; Ouma Decl. ¶ 2. Ouma denies being suicidal at the time of his arrest. Ouma Decl. ¶ 6. Ouma was strip searched, given a safety smock to wear, and placed in the medical observation unit. Medlen Decl. ¶¶ 3-9. Ouma remained at Washington County jail for two days. Ouma Decl. ¶ 5.

On August 13, 2010, Ouma was transferred to Clackamas County jail and was arraigned in court that same day. Dugan Decl. Ex. L at 3. At the arraignment, Ouma stated that he never received the letter regarding his May 12, 2010 arraignment. Id. Ex. K. The deputy district attorney confirmed that the arraignment letter had been returned. Id. Ouma provided his current address, which differed from the address on the arraignment letter. Id.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

3 - OPINION & ORDER

pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Before I address the merits of Defendants' motions, I note that Plaintiff has agreed to narrow the scope of his second amended complaint. Plaintiff agreed to dismiss his third claim against Defendants John Does 4, 5, and 6 and Clackamas County for improper treatment while at Clackamas County jail. Resp. Clackamas Cnty. [53] 4. Plaintiff additionally agreed to dismiss his second claim against Defendants John Does 7, 8, and 9 for improper treatment while at Washington County Jail. Resp. Washington Cnty. [46] 2. Therefore, only the following claims are still at issue:

> Claim One: (count one) false arrest in violation of the Fourth Amendment against Defendants John Does 1, 2, and 3; (count two) false arrest in violation of "procedural and substantive due process" against Defendant Clackamas County
>
> Claim Two: (count two) violation of substantive due process for improper treatment in jail against Defendant Washington County

Second Am. Compl. 4-5, 8.

/ / /

4 - OPINION & ORDER

I.       Claim One – False Arrest

Plaintiff's first claim alleges that John Does 1, 2, and 3 were responsible for the incorrect address on Ouma's arraignment letter. Even after conducting discovery, Plaintiff has not been able to identify the individuals that should be substituted for the John Doe designations. Dugan Decl. ¶ 2. This case was filed on August 13, 2012. The deadline to complete discovery was December 31, 2013. Sept. 18, 2013 Minutes [36]. Plaintiff's counsel has had ample time and opportunity, over a year since the filing of the case, to determine the identities of the John Does. It is clear that Plaintiff cannot determine the identities of John Does 1, 2, and 3. This case cannot proceed to trial against John Does 1, 2, and 3, who have not been served or named. See Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980) (use of John Doe disfavored, but allowed through the end of discovery); Roshone v. Jost, No. 11-cv-01331-PK, 2013 U.S. Dist. LEXIS 154439, at *25 (D. Or. Sept. 3, 2013) (unnamed John Doe defendant dismissed after discovery closed); Therefore, John Does 1, 2, and 3 are dismissed from this case.

Plaintiff's first claim also alleges that Clackamas County is liable for the incorrectly addressed arraignment letter. There are two problems with Plaintiff's claim against Clackamas County. First, the Clackamas County District Attorney's Office, not Clackamas County, sent the arraignment letter. The District Attorney's Office is an arm of the State, not the county. See Kleinman v. Multnomah County, No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at *16 (D. Or. Oct. 15, 2004) (Multnomah County District Attorney's Office is a state entity). Clackamas County cannot be held responsible for actions by the District Attorney's Office. Plaintiff responds that clerical employees at the District Attorney's Office work for the County, and therefore Clackamas County is liable. Plaintiff's argument relies on an assumption that clerical employees sent the arraignment letter. There is no evidence in the record to support such an

assumption. I dismissed John Does 1, 2, and 3 for the same reason—there is no evidence of the identity of those involved with sending the incorrectly addressed arraignment letter.

Second, Plaintiff has not shown that his due process rights were violated. "To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Oviatt v. Pearce, 954 F.2d 1470, 1472 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)). Plaintiff does not argue that the warrant was improper, thus leading to a false arrest. Instead, Plaintiff argues he was falsely arrested because he never received the arraignment letter, and thus did not have the opportunity to voluntarily appear, thereby obviating a need for an arrest warrant. Resp. Clackamas Cnty. 5 ("[T]he warrant clearly states that it is for failure to obey a court order."). Plaintiff is mistaken about the basis for the arrest warrant. The basis for the warrant was a charge for Sexual Abuse III, not a failure to appear. Clackamas Cnty. MSJ Ex. 1. Before the judge issued the warrant, he heard testimony from the deputy district attorney about an incident at a group home where Plaintiff had been employed, thus establishing probable cause for the Sexual Abuse III charge.[1] Id. at Ex. 3.

The glaring problem with Plaintiff's claim is the absence of legal authority to show that a constitutional violation occurred. Despite a valid arrest warrant, Plaintiff claims that his due

---

[1] The warrant states that Ouma was "charged with [Sexual Abuse 3] and failed to obey an order of the court. It is ORDERED a warrant be issued…." Clackamas Cnty. MSJ Ex. 1. There is no evidence to explain what court order Ouma had failed to obey. Regardless, the colloquy between the judge and the deputy district attorney establishes that the warrant issued based on the deputy district attorney's testimony on the Sexual Abuse III charge, not Ouma's failure to obey a court order.

6 - OPINION & ORDER

process rights were violated because he did not receive the arraignment letter.  I know of no legal authority that creates a constitutional right to receive an arraignment letter.  Although Plaintiff cites to cases to support his claim that a constitutional violation occurred, none are applicable.

First, Plaintiff cites to a case in which a court clerk accidentally deleted plaintiff's name from the docket sheet, resulting in the plaintiff being incarcerated for 114 days before being arraigned.  Oviatt, 954 F.2d at 1472.  The basis for plaintiff's § 1983 action was his incarceration for 114 days without a court appearance in violation of the 14th Amendment due process clause.  Id. at 1474.  Plaintiff attempts to show a due process deprivation by comparing the facts of Oviatt to his circumstances—the deletion of plaintiff's name from the docket sheet in Oviatt and the incorrectly addressed arraignment letter.  This comparison is inaccurate.  In Oviatt, the due process violation was prolonged incarceration without arraignment, not the incorrect docket sheet.  Although the docket sheet error may have led to the prolonged incarceration, the constitutional violation is the deprivation of 14th Amendment due process.  Similarly, the incorrectly addressed arraignment letter led to the arrest warrant being issued, but Plaintiff does not argue any constitutional violations related to the warrant itself.  Oviatt does not support Plaintiff's assertion that an incorrectly addressed arraignment letter is a due process violation.

Plaintiff next cites to two cases in which the there was a problem with the arrest warrant.  Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002), Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001).  In Galbraith, the court recognized the legal principle that "government investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit." 307 F.3d at 1126.  In Lee, the plaintiff was detained, mistakenly identified as a fugitive, even though the fingerprints and other identifying characteristics did not match those of the fugitive, and then arrested.  250 F.3d at

7 - OPINION & ORDER

677-78.  Plaintiff does not claim that the warrant was obtained improperly or that he is not the person identified in the arrest warrant.  Both Galbraith and Lee are inapplicable.

At the hearing, Plaintiff argued for the first time that a due process violation may occur if a municipality does not follow an established, non-constitutionally based policy, a person relies on the policy, and the person consequently suffers from relying on the policy.  Plaintiff directed the court to United States v. Caceres, 440 U.S. 741, 752-53 (1979) to support this proposition.  I have reviewed Caceres and disagree with Plaintiff's interpretation of Caceres and the assertion that it has any application to the present case.  The Caceres court recognized that the due process clause could be implicated if the plaintiff "reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency."  Id. (citing Raley v. Ohio, 360 U.S. 423, 437 (1959) (due process violation when individuals relied on an assurance that they could exercise their right against self-incrimination, but then were convicted for refusing to answer questions).  Even assuming that the District Attorney's Office had a "policy" of sending arraignment letters, there is no evidence that Plaintiff knew of this policy or that he relied on that policy.

For all of the reasons stated above, Plaintiff's first claim against Clackamas County is dismissed.

II.     Claim Two – Improper Treatment in Jail

Plaintiff's second claim alleges that Washington County is liable for the improper treatment that he received in the jail.  Plaintiff claims a constitutional violation of "substantive due process" as the basis for his § 1983 action, implying a violation of his 14th Amendment rights.[2]  However, the Fourth Amendment is most applicable to Plaintiff's allegations of an

---

[2] In response to Washington County's assertion that the Fourth Amendment, and not the 14th Amendment applies, Plaintiff concedes that he does not "cite to any specific amendment" and

8 - OPINION & ORDER

unreasonable search.  Bull v. City & County of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (Fourth Amendment prohibits unreasonable searches and applies to the "invasion of bodily privacy in prisons.").  Therefore I will construe Plaintiff's second claim as a violation of the Fourth Amendment.

As to any claim brought against a municipality, Plaintiff must show that a Washington County custom or policy caused a violation of his constitutional rights.  Delia v. City of Rialto, 621 F.3d 1069, 1081 (9th Cir. 2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978) (holding that a municipality is a "person" subject to damages liability under section 1983 where it has caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.")).  In Monell, the Court specifically rejected the use of the doctrine of respondeat superior to hold a municipality liable for the unconstitutional acts of its employees.  Id. at 694.  Rather, municipalities may be held liable only when an injury is inflicted by a city's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]"  Id.  Additionally, while in some instances a single decision may subject a municipality to section 1983 liability, such liability "attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered."  Pembaur v. City of Cincinnati, 475 U.S. 469, 481(1986).

Thus, to establish an official policy or custom sufficient for Monell liability, "a plaintiff must show a constitutional right violation resulting from (1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a final policymaker."  Id. at 1081-82.  Here, Plaintiff

---

that "[w]hichever amendment applies…the strip search was not allowed[.]"  Resp. Washington Cnty. 3.

9 - OPINION & ORDER

challenges the constitutionality of Washington County's strip search policy. Washington County disagrees that the strip search violates the Fourth Amendment.

Plaintiff states the following occurred in relation to the strip search:

- A deputy took Ouma to the shower, yelled at him, and ordered him to strip. The deputy ordered Ouma "to turn around, bend, open [his] buttocks wide," and "wash and rub [his] penis and buttocks with [his] fingers while he watched[.]" Ouma Decl. ¶ 3. The deputy also ordered Ouma to force his fingers into his buttocks. Id.

- After the shower and cavity search, the deputy gave Ouma a "heavy rug" to wear that inadequately covered his genitals. Id. at ¶ 4.

- The deputy put the "rug" on Ouma and touched his buttocks briefly. Id. at ¶ 4.

Corporal Rex Medlen conducted Ouma's strip search and his account of the strip search generally mirrors Plaintiff's account. Medlen Decl. ¶¶ 5-10. The dispute between Plaintiff and Washington County is whether the strip search should have been done in the first place.

The Supreme Court has held that strip searches of the kind experienced by Plaintiff do not violate the Fourth Amendment if the person will be admitted to the general jail population, regardless of whether the person is arrested for a minor offense or whether the person is suspected of possessing contraband. Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510, 1513-15 (2012). In Part IV of Florence, the Court states it was not required to rule on the reasonableness of searches for detainees not assigned to the general jail population. Id. at 1522. Part IV appears to limit Florence's holding to detainees in the general jail population. However, Part IV is not controlling because only three of the five Justices in the majority joined Part IV.

Like Florence, the Ninth Circuit has held that strip searches for arrestees entering the general prison population do not violate the Fourth Amendment. Bull v. City & County of San Francisco, 595 F.3d 964, 981 (9th Cir. 2010). "Bull, however, left undisturbed our line of

10 - OPINION & ORDER

precedent requiring reasonable suspicion to strip search arrestees charged with minor offenses who are not classified for housing in the general jail population." Edgerly, 599 F.3d at 957; Bull, 595 F.3d at 981 ("We do not, however, disturb our prior opinions considering searches of arrestees who were not classified for housing in the general jail or prison population.").

      The question of whether Plaintiff was part of the general jail population is important to determine the legality of the strip search. Not surprisingly, the parties dispute whether Plaintiff was housed in the general jail population. Washington County explains that once all release options have been exhausted for an arrestee, as in Plaintiff's case, the arrestee's status changes to that of an inmate. Frohnert Decl. ¶¶ 6-7. The inmate is then moved from the intake and booking areas and into the jail's general population. Id. Before moving into jail, all inmates are strip searched for contraband, showered, and dressed in jail clothing. Id. at ¶ 8. This procedure occurs regardless of where the inmate is housed in the jail. Id. Although Plaintiff was housed in the medical observation unit, he was still considered part of the general jail population because there are opportunities for contact with other inmates. Id. at ¶¶ 3-4. Contact with other inmates may occur because other inmates are housed in the medical observation unit, inmates enter the medical observation unit to work, and inmates in the medical observation unit have out-of-cell time for up to an hour a day. Id. at ¶ 3; Medlen Decl. ¶ 12. There is also the possibility for contact when an inmate leaves the medical observation unit and is transferred to a different part of the jail. Frohnert Decl. ¶ 3.

      Plaintiff does not dispute any of this evidence, but merely states that he was "held separate from other prisoners[.]" Ouma Decl. ¶ 5. Even though Plaintiff may have been held separately, there is no dispute that Plaintiff's status had changed to that of an inmate, which required admission into the general jail population. Viewing the facts in a light most favorable

11 - OPINION & ORDER

to Plaintiff, the non-moving party, there is no genuine dispute that Plaintiff was part of the general jail population. Therefore, Washington County did not violate Plaintiff's Fourth Amendment right by conducting a strip search. Because there is no constitutional violation to support Plaintiff's § 1983 claim for municipal liability, Washington County's motion is granted and Plaintiff's second claim is dismissed.

III.     Request for Sanctions

Clackamas County renews its request for sanctions against Plaintiff for pursuing "baseless claims." I had reserved the issue of sanctions until the merits of the case were decided. Apr. 30, 2013 Op. & Order [23]. Clackamas County has previously argued for sanctions under 28 U.S.C. § 1927 or the court's inherent authority.

Under 28 U.S.C. § 1927, "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." Sanctions under § 1927 "must be supported by a finding of subjective bad faith." New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989). Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent. Id. (quotation and citation omitted). While § 1927 refers to "multiplication" of proceedings, it also imposes a duty to correct or withdraw litigation positions after it becomes obvious that they are meritless. In re Girardi, 611 F.3d 1027, 1064 (9th Cir. 2010).

Sanctions pursuant to a court's inherent power must be preceded by a finding of bad faith, or conduct tantamount to bad faith. Fink v. Gomez, 239 F.3d 989, 992-94 (9th Cir. 2001); see also Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001). Under this standard, although

recklessness alone does not justify the imposition of sanctions, sanctions are available when recklessness is combined with an additional factor such as frivolousness, harassment or an improper purpose. Id.

There is insufficient evidence that Plaintiff's counsel engaged in conduct that rises to the level of bad faith or that counsel's behavior has been reckless in raising arguments so frivolous as to "constitute objective evidence of improper purpose." Girardi, 611 F. 3d at 1062. I decline to impose sanctions.

## CONCLUSION

Plaintiff has agreed to dismiss John Doe Defendants 4, 5, 6, 7, 8, and 9 and Plaintiff's third claim. Additionally, based on reasons previously stated, John Does 1, 2, and 3 are dismissed, Clackamas County's motion [37] for summary judgment is granted, and Washington County's motion for summary judgment [45] is granted. Therefore, Plaintiff's first and second claims are also dismissed.

IT IS SO ORDERED.

Dated this 7 day of May, 2014.

_____
MARCO A. HERNANDEZ
United States District Judge

13 - OPINION & ORDER